**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

BETTY S. RUIZ, )
)
        Plaintiff, )
)
v. ) Case No. CIV-14-396-RAW-KEW
)
CAROLYN W. COLVIN, Acting )
Commissioner of Social )
Security Administration, )
)
        Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Betty S. Ruiz (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on February 21, 1968 and was 45 years old at the time of the ALJ's decision. Claimant completed her high school education, obtained an associate's degree, and a vocational secretary certificate. Claimant has worked in the past as a day care worker and a kitchen/housekeeping/laundry worker at a nursing

3

home.  Claimant alleges an inability to work beginning August 3, 2011 due to limitations resulting from stress and anxiety, depression, incontinence, and pain due to a previously fractured pelvis.

**Procedural History**

On September 19, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and on September 27, 2011 for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.  Claimant's applications were denied initially and upon reconsideration.  An administrative hearing was conducted by Administrative Law Judge James Bentley ("ALJ") by video on June 13, 2013 with Claimant appearing in Poteau, Oklahoma and the ALJ presiding in McAlester, Oklahoma.  The ALJ issued an unfavorable decision on July 31, 2013.  On July 28, 2014, the Appeals Council denied review.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform light work with

restrictions.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly develop the record; (2) reaching an improper RFC assessment; and (3) finding at step five that other jobs existing which Claimant could perform.

**Duty to Develop the Record**

In his decision, the ALJ determined Claimant suffered from the severe impairments of obesity, residuals of a fractured pelvis, probable carpal tunnel syndrome, pulsatile tinnitus, depression, anxiety, and PTSD. (Tr. 14). He concluded that Claimant retained the RFC to perform light work except that she can frequently but not continuously handle and finger bilaterally, she must avoid frequent exposure to loud noises, she requires a sit/stand option, she is limited to simple, routine, and repetitive tasks with routine supervision. The ALJ also found Claimant could only have occasional contact with co-workers and supervisors, but must have no contact with the general public. (Tr. 18). After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of merchandise marker, routing clerk, and label coder, all of which the vocational expert testified existed in sufficient numbers in the regional and national economies. (Tr.

5

28). Based upon these findings, the ALJ concluded Claimant was not disabled from August 3, 2011 through the date of the decision. Id.

Claimant contends the ALJ failed to contact her treating source, failed to order a consultative physical examination, and failed to obtain a medical source statement from either of these professionals to ascertain the combined effect of Claimant's impairments. As an initial matter, Claimant's assertion that the ALJ erred by not obtaining medical source statements is not legally supported. Certainly, the regulations generally require that the adjudicators request medical source statements from acceptable medical sources with their reports. Soc. Sec. R. 96-5p. However, nothing in the regulations require the reversal and remand of a case because such statements were not obtained. Indeed, the regulations expressly state that "the absence of such a statement in a consultative examination report will not make the report incomplete." 20 C.F.R. § 416.919n(c)(6); *see also* 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6); Branam v. Barnhart, 385 F.3d 1268, 1273 (10th Cir. 2004). Therefore, the failure of the ALJ to obtain a statement from any medical professional does not constitute reversible error.

Claimant also contends the ALJ should have re-contacted "Plaintiff's treating source." She does not specify which treating

6

source should have been re-contacted or why such action was necessary. The ALJ is only required to re-contact a physician if the evidence in the record is inadequate to make a determination. 20 C.F.R. §§ 404.1512, 404.1520b(c). Rejecting a physician's opinion does not require re-contacting the physician but rather the lack of evidence triggers the obligation to re-contact. White v. Barnhart, 27 F.3d 903, 908 (10th Cir. 2002). The evidence in the record was ample for the ALJ to adjudicate this case without re-contacting any treating physician.

Claimant also states that a consultative physical examiner should have been retained. Again, she does not state exactly what evidence was lacking or in conflict which would require the retention of a consultative physical examiner. Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human

7

Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence mus be resolved, and we are unable to do

so by recontacting your medical source; or

(5) There is an indication of a change in your condition that is likely to affect your ability to work.

20 C.F.R. § 416.909a(2)(b).

This Court does not perceive that any of the factors which might compel the ordering of a consultative examination to be present in this case. No conflict in the medical evidence exists, Claimant's condition does not require the evaluation by highly specialized experts, no change of condition has been suggested, and the need for additional evidence is not indicated. As a result, the ALJ did not err in failing to obtain a mental consultative examiner.

Claimant next asserts the ALJ should have obtained a "proper medical source statement from Dr. Theresa Horton, a consultative psychological examiner. Dr. Horton examined Claimant on November 29, 2011. She concluded Claimant was capable of understanding, remembering and managing most simple and complex instructions and tasks, although her concentration was poor and likely affected her level of productivity and ability, particularly her management of more complex tasks. Dr. Horton found Claimant appeared capable of adequate social and emotional adjustment only in slower paced settings and likely would not do well in settings that are fast paced or require a great deal of public interaction. Claimant took

medication for anxiety which causes her to become much more forgetful which would also affect her productivity at home and work. (Tr. 292-93).

The ALJ gave Dr. Horton's opinion "great weight" insofar as she found Claimant's functional limitations. He gave "little weight", however, to the finding that anxiety medication affected Claimant's memory as it was not supported by the remainder of the record or Claimant's testimony on functioning. (Tr. 24). The ALJ adopted Dr. Horton's functional limitations in his RFC determination. (Tr. 26-27). This Court finds no error in the ALJ's analysis of Dr. Horton's opinion. He accommodated the functional restrictions diagnosed by Dr. Horton in his RFC analysis and his rejection of the memory restriction was justified as Claimant's testimony supported such a finding.

Claimant also alludes to the fact that she believed the ALJ should have obtained a medical source statement from Dr. Horton. As stated, the lack of such a statement does not constitute reversible error. Additionally, Dr. Horton's narrative findings on functioning more than adequately incorporated her opinion on Claimant's limitations which does not lessen its effectiveness despite not being set forth on a form entitled "Medical Source Statement."

## RFC Determination

Claimant contends the ALJ failed to properly consider all of the opinion testimony in reaching his RFC. While making general statements in this regard, Claimant specifically identifies various letters from counselors at Hartsell Psychological Services. Indeed, the ALJ recognized the four letters at issue written on October 24, 2011, January 16, 2012, March 16, 2012, and November 28, 2012. He also found that the first three letters were written by candidates of licensure under supervision and not licensed counselors. (Tr. 20). The ALJ recited in considerable detail the findings of the counselors in these letters but concluded they were not an acceptable medical source under the regulations. He also found, however, that their opinions still had to be considered to "provide insights into the severity of the claimant's impairments." (Tr. 21). The ALJ gave the opinions "little weight" because they were inconsistent with the contemporaneous treating notes and the findings of the mental status examination of Dr. Horton. Id.

The medical record substantially supports the ALJ's findings. On March 15, 2011, the treatment notes indicate Claimant was "doing well on meds. 'Life is going good.'" Claimant's speech was logical and sleep, concentration, appetite, energy, psychomotor, and mood were all normal. (Tr. 359). On November 28, 2011, while Claimant

11

was positive for anxiety, she was not in acute distress and was "doing good with medications." (Tr. 324). As stated, Dr. Horton found Claimant was generally normal with some restrictions which were accommodated by the ALJ in his RFC findings. (Tr. 292). Claimant continued to do well with medication in visits to medical facilities in December of 2011, May of 2012, and March, April, and May of 2013. (Tr. 327, 395, 417, 422, 427).

On June 11, 2013, Dr. Peteryne Miller found Claimant to have "good" fund of knowledge, attention/concentration, memory, and problem solving. (Tr. 435). She did appear anxious and preoccupied. Id.

The ALJ properly concluded that Claimant's condition was well-controlled with medication and discounted the findings of the unlicensed counselors. He accommodated problems with carry out detailed instructions in his RFC and carefully considered the contrary opinions.

Claimant also contends the ALJ failed to assess the appropriate weight to the opinion of Ms. Nancy Cheely, MSW and LCSW candidate, who provided a medical source statement on May 22, 2013. Ms. Cheely found Claimant had marked or severe limitations in nearly all but one of the twenty functional areas set forth on the form. (Tr. 410-12). The ALJ gave Ms. Cheely's opinion "little

12

weight" as, again, it was inconsistent with the treatment records and the mental status examination findings. (Tr. 24). Without doubt, Ms. Cheely's findings were the most severe of any in the medical record. No other medical professional or examining source reached these extreme findings on Claimant's mental limitations. Nothing in the treatment notes support such a debilitating conclusion on Claimant's ability to function. The ALJ did not err in finding that these conclusions were unsupported or contradicted by the remainder of the medical record.

The final issue raised in the litany set forth by Claimant under this single topic alleges the ALJ improperly assessed her credibility. The ALJ detailed the discrepancies between Claimant's allegations and the medical record. He noted that while Claimant complained of pain while walking such that she could only walk for five to ten minutes at a time, she failed to complain of musculoskeletal difficulties to the medical professionals who attended her. (Tr. 279-80, 324-25, 327-28, 330-31, 403-04). Claimant repeatedly reported that she was doing well on her medications. (Tr. 292, 324, 327, 359, 395, 417, 422, 427, 435). While Claimant reported she did not do well in crowds, she shopped and took public transportation. (Tr. 42, 51).

It is well-established that "findings as to credibility should

13

be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. It must be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). The ALJ cited the repeated

inconsistencies between the medical findings, Claimant's statements, and her claims of functional restrictions and affirmatively and closely linked his findings on credibility to the factual record. This Court finds no error in his credibility assessment.

**Step Five Analysis**

Claimant asserts the ALJ omitted restrictions from his hypothetical questioning of the vocational expert which would have precluded her performing in the representative jobs cited by the expert. The ALJ accurately set forth his RFC findings in his hypothetical questioning of the expert. As this Court has found, the ALJ's RFC determination is supported by substantial evidence contained in the record.

A vocational expert's testimony can provide a proper basis for an ALJ's determination where the claimant's impairments are reflected adequately in the hypothetical inquiries to the expert. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). However, "'[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.'" Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) quoting Ekeland v. Bowen, 899 F.2d 719, 724 (8th Cir. 1990). The ALJ's questioning

precisely reflected Claimant's impairments and his RFC findings and, therefore, was not erroneous.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.

The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 29th day of April, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE